UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
JESSICA BRISTOL,                                :

                 Plaintiff,         :

            -v.-                                    :

SECURITAS SECURITY SERVICES    :
USA, INC.,

                                :

                 Defendant.
---------------------------------------------------------X

OPINION & ORDER

21 Civ. 10636 (AJN) (GWG)

**GABRIEL W. GORENSTEIN, United States Magistrate Judge**

      Plaintiff Jessica Bristol brings this employment discrimination action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.; the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq.; the New York State Human Rights Law, N.Y. Exec. Law §§ 290 to 29; and the New York City Human Rights Law, N.Y. City Admin. Code §§ 8-101 to 131, alleging her former employer, Securitas Security Services USA, Inc. ("Securitas"), discriminated against her because of her pregnancy and disability. See Complaint, filed Dec. 13, 2021 (Docket # 1) ("Comp."), at 9-10. Before the Court is defendant's motion to compel arbitration under the Federal Arbitration Act, 9 U.S.C. § 1, et seq. ("FAA").[1] For the following reasons, defendant's motion is granted.[2]

---

[1] Motion to Compel Arbitration, filed Feb. 15, 2022 (Docket # 8) ("Def. Mot."); Memorandum of Law in Support, filed Feb. 15, 2022 (Docket # 9) ("Def. Mem."); Declaration of Lance N. Olitt in Support, dated Feb. 15, 2022, annexed as Ex. 1 to Def. Mem.; Declaration of Nicole Fredericks, dated Feb. 14, 2022, annexed as Ex. 2 to Def. Mem. ("Fredericks Decl."); Memorandum of Law in Opposition, filed Mar. 1, 2022 (Docket # 10) ("Pl. Opp."); Reply Memorandum of Law in Support, filed Mar. 8, 2022 (Docket # 11).

[2] "District courts in this Circuit regularly have concluded that a motion to compel arbitration and stay litigation pending arbitration is non-dispositive and therefore within a Magistrate Judge's purview to decide without issuing a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)." Chen-Oster v. Goldman, Sachs & Co., 449 F. Supp. 3d 216, 227 n.1 (S.D.N.Y. 2020) (collecting cases).

I. BACKGROUND

  Securitas "provides uniformed security officer and patrol services for businesses and organizations." Comp. ¶ 11. Bristol began working at Securitas in April 2016. See id. ¶ 20; see also Securitas Dispute Resolution Agreement Acknowledgement, dated Apr. 20, 2016, annexed as Ex. A to Fredericks Decl. ("DRA Acknowledgement"). During the onboarding process, Bristol signed a form acknowledging that she had received a copy of Securitas's Dispute Resolution Agreement (the "Agreement"). The form stated:

> I have received a copy of the Securitas Security Services USA, Inc. (the "Company") Dispute Resolution Agreement (the "Agreement") and I have read and I understand all of the terms contained in the Agreement. I understand that employment or continued employment at the Company constitutes acceptance of this Agreement and its terms. I further acknowledge that the Company and I are mutually bound by this Agreement and its terms.

DRA Acknowledgement at 1. The Agreement (annexed as Ex. B to Fredericks Decl.) states that it "applies to your employment whether or not you sign the acknowledgment, which is intended simply to confirm that you have received and read your copy." Agreement at 1.

  In its first paragraph, the Agreement states that it is an "Arbitration Agreement." Id. The first paragraph further states: "Under the terms set forth below, both you and the Company mutually agree and thus are required to resolve claims either may have against the other by Arbitration instead of in a court of law." Id. (emphasis added). A later provision provides that the Agreement "appl[ies] to the resolution of disputes that otherwise would be resolved in a court of law or before a forum other than arbitration," including, "without limitation, disputes relating to the interpretation or application of this Agreement." Id. at 2. The Agreement recognizes that a court would have to resolve any disputes "over the enforceability, revocability, or validity of the Agreement." Id. at 2. The Agreement applies to "all disputes regarding the employment

relationship." Id. The Agreement states that it "is governed by the Federal Arbitration Act," id. at 1, and requires that disputes that fall under its terms are "to be resolved only by an Arbitrator through final and binding arbitration and not by way of court or jury trial," id. at 2.

According to the complaint, several years after beginning employment with Securitas, Bristol became pregnant, and in September 2019 she was diagnosed as having a high-risk pregnancy. See Comp. ¶¶ 27-28. After Bristol underwent a surgical procedure, her physicians advised her not to stand for long periods of time, and Bristol provided Securitas with a physician's note to that effect. See id. ¶¶ 29-31. Bristol alleges that Securitas could have placed her on restrictive desk duty to minimize the health risk associated with her employment, but it did not, and she was often required to stand at work. See id. ¶¶ 33-37. Bristol eventually gave birth prematurely to a child who has experienced significant health problems. See id. ¶¶ 38-56. Bristol alleges that Securitas's failure to provide her with a sitting post constituted discrimination on the basis of her disability and pregnancy. See id. ¶¶ 57-68.

II. LEGAL STANDARD

The FAA reflects "a strong federal policy favoring arbitration as an alternative means of dispute resolution." Ross v. Am. Express Co., 547 F.3d 137, 142 (2d Cir. 2008) (quotation omitted). Section 2 of the FAA provides in pertinent part:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. Section 4 of the FAA permits a party to obtain from a federal district court "an order directing that [an] arbitration proceed in the manner provided for" in an arbitration agreement. Id. § 4. As the Second Circuit has held, the FAA "requires the federal courts to enforce arbitration agreements, reflecting Congress' recognition that arbitration is to be

encouraged as a means of reducing the costs and delays associated with litigation." <u>Vera v. Saks & Co.</u>, 335 F.3d 109, 116 (2d Cir. 2003) (quotation omitted).

The Second Circuit has held that a court considering a motion to compel arbitration of a dispute first must

> determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then decide whether to stay the balance of the proceedings pending arbitration.

<u>JLM Indus., Inc. v. Stolt-Nielsen SA</u>, 387 F.3d 163, 169 (2d Cir. 2004) (quotation omitted). "[U]nder the FAA, 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.'" <u>Id.</u> at 171 (quoting <u>Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 24-25 (1983)).

When a motion to compel arbitration is brought, a "court applies a standard similar to that applicable for a motion for summary judgment." <u>Bensadoun v. Jobe-Riat</u>, 316 F.3d 171, 175 (2d Cir. 2003). "If undisputed facts in the record require[] the issue of arbitrability to be resolved against the Plaintiff as a matter of law," the motion to compel arbitration must be granted. <u>Id.</u> If, however, the party opposing arbitration can show "there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary." <u>Id.</u> (citing 9 U.S.C. § 4).

III. <u>DISCUSSION</u>

Bristol does not contest that factors two through four of the four-factor test require arbitration here. Instead, she argues that the Agreement is insufficiently definite in its terms to be enforceable. <u>See</u> Pl. Opp. at 3-7. She also argues that she did not knowingly and voluntarily waive her right to a jury trial. <u>See id.</u> at 7-12. We view each of these arguments as relating to

the first factor of the four-factor test: mutual assent, and we thus turn to a discussion of that factor.

To determine whether there is an agreement to arbitrate, "we look to 'state contract law principles.'" Abdullayeva v. Attending Homecare Servs. LLC, 928 F.3d 218, 222 (2d Cir. 2019) (quoting Nicosia v. Amazon.com, Inc., 834 F.3d 220, 229 (2d Cir. 2016)).  Under New York law, contract formation requires a "manifestation of mutual assent [that is] sufficiently definite to assure that the parties are truly in agreement with respect to all material terms." Starke v. SquareTrade, Inc., 913 F.3d 279, 289 (2d Cir. 2019) (citing Joseph Martin, Jr., Delicatessen, Inc. v. Schumacher, 52 N.Y.2d 105, 109 (1981)).

Bristol argues that the Agreement is too indefinite for her to be bound by its terms because it "lacks essential, material terms which are necessary for any agreement to arbitrate," such as "the location of the arbitration, the arbitral forum, the arbitrator or neutral to be selected, the rules of arbitration . . . which will apply, and the applicable choice of law." Pl. Opp. at 5.

Bristol focuses first on the Agreement's procedure for selecting an arbitrator, arguing that the Agreement provides merely that the parties "will attempt to negotiate a mutually agreeable arbitrator." Id.  While it is correct that the Agreement directs the parties to attempt to agree to an arbitrator, the Agreement provides details about the selection of an arbitrator if that attempt fails. The paragraph entitled "Selecting the Arbitrator" provides:

> The Arbitrator shall be selected by mutual agreement of the Company and the Employee.  Unless the Employee and Company mutually agree otherwise, the Arbitrator shall be an attorney licensed to practice in the location where the arbitration proceeding will be conducted or a retired federal or state judicial officer who presided in the jurisdiction where the arbitration will be conducted.  <u>If for any reason the parties cannot agree to an Arbitrator, either party may apply to a court of competent jurisdiction with authority over the location where the arbitration will be conducted for appointment of a neutral Arbitrator.  The court shall then appoint an Arbitrator, who shall act under this agreement with the same force and</u>

> effect as if the parties had selected the Arbitrator by mutual agreement. The location of the arbitration proceeding shall be no more than 45 miles from the place where the Employee last worked for the Company, unless each party to the arbitration agrees otherwise in writing.

See Agreement at 3-4 (emphasis added).

While Bristol argues that this provision is indefinite because it is a "mere agreement to agree," which is unenforceable, see Pl. Opp. at 5 (quoting Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc., 487 F.3d 89, 95 (2d Cir. 2007)), the Agreement does not require that the parties reach an agreement on an arbitrator in order for an arbitrator to be appointed. Instead, the Agreement specifically provides that a court shall appoint an arbitrator if no agreement is reached.[3] Accordingly, we find no indefiniteness of this term that would preclude enforcement of the Agreement as to Bristol.

We similarly find no deficiencies in the other allegedly "essential" terms Bristol claims have been omitted or left indefinite by the Agreement. Although Bristol contends that arbitration agreements are unenforceable when they do not specify "the location of the arbitration, the arbitral forum, . . . the rules of arbitration (i.e., comprehensive, streamlined, class, consumer, etc.) which will apply, and the applicable choice of law," see Pl. Opp. at 5, "[c]ourts within this

---

[3] This is consonant with the FAA itself, which contemplates the appointment of an arbitrator even if an arbitration agreement provides no mechanism for selecting one:

> If in the agreement provision be made for a method of naming or appointing an arbitrator . . . such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein . . . .

9 U.S.C. § 5.

circuit have routinely rejected the argument that the procedural rules governing arbitration constitute essential terms." Hudson Specialty Ins. Co. v. New Jersey Transit Corp., 2015 WL 3542548, at *7 (S.D.N.Y. June 5, 2015) ("Many of the missing details, such as the forum, binding nature, and rules of discovery, will necessarily be established once the parties select an arbitrator."); see Gerena v. Neurological Surgery, P.C., 2016 WL 3647782, at *4 n.4 (E.D.N.Y. June 9, 2016) (non-essential terms include "the method for selecting an arbitrator, the arbitral forum, the procedural law to be followed, the substantive law to be applied, and the location where the arbitration should be held"), adopted by 2016 WL 3647866 (E.D.N.Y. July 1, 2016); Wework Cos. v. Zoumer, 2016 WL 1337280, at *5 (S.D.N.Y. Apr. 5, 2016) ("The lack of specific terms governing the arbitration's procedure does not invalidate the agreement, considering that the FAA provides an objective method to fill gaps in arbitration agreements."); Hojnowski v. Buffalo Bills, Inc., 995 F. Supp. 2d 232, 236 (W.D.N.Y. 2014) (noting an absence of authority holding that the rules and procedures governing arbitration are essential terms); accord Morelli v. Alters, 2020 WL 1285513, at *9 n.5 (S.D.N.Y. Mar. 18, 2020) (collecting cases).

The only case cited by Bristol to support her position is Dynamic Int'l Airways, LLC. v. Air India Ltd., 2016 WL 3748477, at *6 (S.D.N.Y. July 8, 2016), see Pl. Opp. at 6-7, which involved two competing agreements to Arbitrate. The agreement that was the subject of the discussion cited by Bristol was in the form of a letter to the court that asked the court to "afford the parties sufficient time to agree upon the location, forum and terms of arbitration." Dynamic Int'l Airways, 2016 WL 3748477, at *2. The Court found that letter "contemplates that the parties would negotiate those terms in the future" and thus that the letter did not reflect that the parties intended to be bound. Id. at *6. In other words, the parties in Dynamic Int'l Airways

made clear that they intended the procedural terms to be resolved before they had an agreement. Here, by contrast, nothing in the Agreement suggests that the parties had to resolve the procedural terms in order to have reached an agreement.[4]

In any event, we note that the Agreement does provide some specificity as to the terms Bristol identifies. The Agreement provides that the "location of the arbitration proceeding shall be no more than 45 miles from the place where the Employee last worked for the Company, unless each party to the arbitration agrees otherwise in writing." Agreement at 3-4. While the Agreement does not cite a set of arbitration rules that will govern the proceeding, a section entitled "How Arbitration is Conducted" provides that "the parties will have the right to conduct adequate civil discovery, bring dispositive motions, and present witnesses and evidence as needed to present their cases and defenses, and any disputes in this regard shall be resolved by the Arbitrator." Id. at 4. Of course, because the Agreement provides for the manner in which the arbitrator will be selected, any procedural matter not specified will be resolved by the arbitrator.

Bristol's only other argument is that she did not "knowingly and voluntarily waive[]" her right to a jury trial. Pl. Opp. at 7-8. Citing Morgan Guar. Tr. Co. of N.Y. v. Crane, 36 F. Supp. 2d 602 (S.D.N.Y. 1999), she asks the Court to analyze this question by applying the four-factor test applied to instances where a party signs a contract waiving the party's right to a jury: "1) the negotiability of contract terms and negotiations between the parties concerning the waiver provision; 2) the conspicuousness of the waiver provision in the contract; 3) the relative bargaining power of the parties; and 4) the business acumen of the party opposing the waiver."

---

[4] To the extent that Dynamic International Airways suggests that "the location, forum and rules of the arbitration" are essential terms to any arbitration agreement, we respectfully disagree. While arguably dictum, any such ruling would be contrary to the precedent described above (none of which is addressed in the opinion).

Id. at 604. But Morgan did not involve an arbitration agreement. The same is true of the other cases Bristol cites that have applied the test articulated in Morgan. Instead, these cases involve commercial or consumer contracts that contained a clause waiving the right to a jury trial. See, e.g., Sherrod v. Time Warner Cable, Inc., 2014 WL 6603879, at *1 (S.D.N.Y. Nov. 21, 2014) (contract for telephone services); RREF RB-AL SLDL, LLC v. Saxon Land Dev., LLC, 2012 WL 1366720, at *1 (M.D. Ala. Apr. 19, 2012) (promissory note). By contrast, the waiver of a jury trial here is simply part-and-parcel of the agreement to arbitrate. In light of the applicability of the FAA to this case and the abundant case law on the standards for enforcing arbitration agreements, we do not see a warrant for applying a test for analyzing jury waivers to arbitration agreements. In other words, the four-factor test cited in Morgan is properly applied to a stand-alone jury waiver clause, not to an otherwise valid arbitration agreement.

"[T]he FAA mandate[s] a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested." Katz v. Cellco P'ship, 794 F.3d 341, 347 (2d Cir. 2015). Here, all of Bristol's claims must be arbitrated, and Securitas has requested a stay of this proceeding pending the arbitration. See Def. Mem. at 11. Accordingly, this case will be stayed pending the outcome of the arbitration proceeding.[5]

---

[5] Without quoting the applicable statutory language, citing any case law, or setting forth the legal standard applicable to its request, Securitas asks the Court to impose sanctions on Bristol pursuant to 28 U.S.C. § 1927 and the Court's inherent powers on the ground that plaintiff's counsel acted in bad faith by filing this action after learning of the Agreement. See Def. Mem. at 11-12. Although plaintiff's position on the arbitrability of her claims has been rejected, there is no basis on which we could find by clear and convincing evidence that her attorney acted in bad faith by making the arguments she did — a prerequisite for the sanction requested by Securitas. See Liebowitz v. Bandshell Artist Mgt., 6 F.4th 267, 286 n.22 (2d Cir. 2021) ("a showing of bad faith by clear and convincing evidence is a prerequisite to imposing sanctions under both § 1927 and the district court's inherent authority").

IV. CONCLUSION

For the foregoing reasons, defendant's motion to compel arbitration (Docket # 8) is granted. This action is stayed pending the conclusion of the arbitration. The parties are directed to report to the Court within 14 days of the arbitration's conclusion.

SO ORDERED.

Dated: April 11, 2022
New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge